THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Cristina Hackett,

        Plaintiff,

vs.

Clifton Gunderson, L.L.C.,

        Defendants.

JUDGE KENNELLY

**03C 6046**

JURY TRIAL DEMANDED

DOCKETED
AUG 2 8 2003

MAGISTRATE JUDGE MASON

# COMPLAINT

NOW COMES Plaintiff, CRISTINA HACKETT, by and through her attorney Lisa M. Stauff, and for her complaint against Defendants CLIFTON GUNDERSON, L.L.C., states as follows:

**Nature of the Claim**

1. This is a three-count action alleging: unlawful discrimination on the basis of pregnancy in violation of the Pregnancy Discrimination Act amendment to Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e *et seq.*; failure to return Plaintiff to work in violation of the Family and Medical Leave Act of 1993, 29 U.S.C.S. § 2601, *et seq.*; and, unlawful retaliation in violation of the Family and Medical Leave Act of 1993, 29 U.S.C.S. § 2601, *et seq* ("FMLA").

**The Parties**

2. Plaintiff Cristina Hackett ("Ms. Hackett") is a citizen of the United States and a resident of Will County, Illinois. Ms. Hackett was an employee of Defendant within the meanings of 42 U.S.C.S. § 2000e(f) and 29 U.S.C.S. § 2611(2)(A)(i-ii).

3. Defendant Clifton Gunderson, L.L.C. ("CG") is an accounting and consulting firm conducting business in the state of Illinois. Defendant is an employer within the meanings of 42 U.S.C.S. § 2000e(b) and 29 U.S.C.S. § 2611(4)(A)(i).

**Jurisdiction and Venue**

4. This Court has jurisdiction in this matter pursuant to 42 U.S.C.S. § 2000e(f), 29 U.S.C.S. § 2617(a)(2), and 28 U.S.C.S. §§ 1331 and 1343(4).

5. Venue is proper under 28 U.S.C.S. §1391(b) because all of the unlawful employment practices alleged herein occurred in both DuPage and Will counties of Illinois, which are located within the Court's division of the U.S. District Court of the Northern District of Illinois.

**Procedural History**

6. On December 12, 2002, Ms. Hackett filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging unlawful discrimination on the basis of pregnancy. *Attached as Exhibit A.*

7. On April 9, 2003, following an interview with the EEOC investigator assigned to this case, Ms. Hackett amended her Charge of Discrimination to amplify allegations made in her original Charge. *Attached as Exhibit B.*

8. On May 30, 2003, the EEOC issued a Notice of Right to Sue. *Attached as Exhibit C.*

9. Ms. Hackett timely files this action on August 27, 2003.

**Ms. Hackett's employment with Clifton Gunderson.**

10. In February 2001, Ms. Hackett applied for a job with CG to provide consulting services to clients who use Blackbaud accounting software.

11. After completing CG's hiring process, Ms. Hackett was offered a job as a Blackbaud consultant at CG's Oak Brook, Illinois, location ("Oakbrook office").

12. Ms. Hackett arrived for her first day of work on March 19, 2001. Upon her arrival, she was told that instead of working at the Oakbrook office for Blackbaud clients, she was to be placed at the Joliet, Illinois, office to provide consulting services to clients who use MIP accounting software.

13. Ms. Hackett had no objection to this sudden change because she was as knowledgeable in MIP as she was in Blackbaud, and but for the change in location, the terms of her employment were the same,.

14. Ms. Hackett began work that day in the Joliet office. Her immediate supervisor was Michelle Scheffki.

15. Ms Hackett's co-workers were Jacqueline Van Nice and Sandy Kammerer. Ms. Van Nice and Ms. Kammerer had the same title as Ms. Hackett, worked out of the same Joliet office as Ms. Hackett, were covered under the same budget as Ms. Hackett, and were supervised by Ms. Scheffki as was Ms. Hackett.

16. Business was brisk right from the beginning. Ms. Hackett and her co-workers worked long hours and did a lot of traveling for work. The client load was so overwhelming that Ms. Hackett and Ms. Van Nice begged Ms. Scheffki to push for authorization to hire an additional consultant.

17. Ms. Scheffki said on numerous occasions that she was working on upper management for clearance to hire another consultant. In early 2002, Ms. Scheffki told Ms. Hackett that she had been granted authority to hire another consultant. A short time later, Ms. Scheffki told Ms. Hackett that she had begun interviewing candidates.

**Ms. Hackett announced her pregnancy, and found herself on the "mommy track."**

18. Ms. Hackett became pregnant with her second child, and announced her pregnancy at the office in autumn 2001.

19. As Ms. Hackett's pregnancy progressed, Ms. Scheffki questioned Ms. Hackett about whether or not she would return to work after having her baby. Ms. Hackett assured her that she intended to come back because she needed her job.

20. Later, Ms. Scheffki told Ms. Hackett and others that she did not expect Ms. Hackett to return to work because she was on the "mommy track." Ms. Scheffki expressed doubt to Ms. Hackett and others that Ms. Hackett would not be as committed to her job, or as capable as she might otherwise be, due to the pregnancy and the imminent arrival of a second child.

21. On April 2, 2002, Ms. Hackett went into labor, and delivered her daughter by cesarean section. She immediately began a 12-week FMLA maternity leave and began to collect short-term disability benefits under CG's employee benefits program.

**Ms. Hackett is terminated three business days before returning from FMLA leave.**

22. Ms. Hackett was scheduled to return to work on July 1, 2002.

23. In the weeks prior to her scheduled return to work, Ms. Hackett called the office several times to check in with Ms. Scheffki. Ms. Hackett's purpose was to see how her clients were doing in her absence, and to see if Ms. Scheffki needed any guidance about pending client matters.

24. Ms. Scheffki never returned any of Ms. Hackett's phone calls. Ms. Hackett double-checked with Ms. Scheffki's assistant to make sure that Ms. Scheffki had received her messages. The assistant assured Ms. Hackett that the messages were getting through.

25. On June 26, 2002, just three business days before Ms. Hackett's return to work, Ms. Scheffki called Ms. Hackett. Ms. Scheffki wanted to see Ms. Hackett immediately for an in-office meeting.

26. Ms. Hackett asked Ms. Scheffki if the meeting could wait until Monday, Ms. Hackett's first day back at work, but Ms. Scheffki said no, the matter was too urgent to wait.

27. Ms. Hackett hastily arranged childcare, and went in to the office the next day for the meeting.

28. After the meeting began, Ms. Scheffki explained that the Joliet office was being consolidated into the Oakbrook office due to a downturn in business. As a result, Ms. Hackett no longer had a job.

29. Ms. Hackett was shocked. This was the last thing that she expected, since the Joliet office had been overflowing with clients when she began her maternity leave.

30. Ms. Hackett asked what would happen to her clients. Ms. Scheffki told her that they would be handled by employees at the Oak Brook office. Ms. Scheffki did not indicate that any of Ms. Hackett's clients had severed their relationship with CG during Ms. Hackett's absence.

31. Ms. Hackett asked if there were any positions available "anywhere" within CG for her. Ms. Scheffki said there were no job openings at this time. She assured Ms. Hackett that she had done everything she could to find a position for Ms. Hackett, but that none existed.

32. Ms. Hackett asked what would happen to Ms. Kammerer and Ms. Scheffki's assistant. Ms. Scheffki said that she was able to find positions for them. Ms. Kammerer would be working out of the Springfield, Illinois, office, and the assistant would be transferred to the Oakbrook office.

33. Ms. Van Nice's employment was not discussed in this conversation because Ms. Van Nice had already left CG's employ in the spring.

34. Ms. Scheffki offered Ms. Hackett four weeks of severance pay in exchange for signing a waiver of CG's liability in any future lawsuit. Ms. Hackett asked for time to review the severance package.

35. Ms. Hackett returned all company property, such as her laptop, the following week. At that time she requested and received a copy of her personnel file from Sandy Maxwell. The file contained no indication that her performance was lacking in any way.

**Ms. Hackett discovered that Ms. Scheffki lied about the lack of positions with the company.**

36. Within the next couple of days, Ms. Hackett went to the CG website to see if there was any news about the Joliet office or CG's MIP consulting services. She also perused the employment openings listed on the site.

37. To her surprise, Ms. Hackett found several job openings for her exact job title. She also found other positions for which she was qualified. Several of the listings were in the Midwest sales territory that Ms. Scheffki supervised.

38. Moreover, several articles on the CG website reported that business was booming for CG's MIP and Blackbaud consulting services.

39. This information, which was culled from CG's public website, contradicted everything that Ms. Scheffki said in Ms. Hackett's termination meeting, i.e., that there were no available positions within the company, and that there was downturn in business.

40. Ms. Hackett did not apply for any of these positions because she felt betrayed by CG and no longer trusted the company or Ms. Scheffki. Furthermore, Ms. Hackett retained counsel, and rejected the four-week severance offer.

**Ms. Hackett's job was given to people who were significantly under-qualified to do the work.**

41. Ms. Hackett also found out through other sources that right after her termination, Blackbaud consultants in the Oakbrook office were handling MIP clients formerly handled by Ms. Hackett's team in the Joliet office. Additionally, these consultants had to be trained in MIP in order to do their jobs.

42. One Oakbrook consultant was dubbed "the new Jackie" when she took over an account that formerly belonged to Ms. Van Nice. Moreover, "the new Jackie" told the client that she was new to MIP, and was in the process of learning the software.

### Ms. Hackett's suffered severe financial and emotional damages.

43. Ms. Hackett began a job search immediately through internet sites and recruiters. One recruiter told her that it would take many months for her to find work in her field, anywhere in the nation.

44. Despite this bad news, Ms. Hackett continued to look for work. Ms. Hackett applied for dozens of jobs, none of which have panned out.

45. Ms. Hackett continues to look for a permanent position comparable in salary, duties, and benefits. In the meantime, she has accepted freelance and/or temporary work to mitigate some of her damages.

46. Due to her termination, Ms. Hackett and her family lost income that was essential to her family's economic condition.

47. Ms. Hackett also lost non-refundable childcare tuition that she had paid for childcare services that she did not need now that she was unemployed.

48. Ms. Hackett's termination also caused her stress, depression, embarrassment, self-doubt, humiliation, and sleeplessness.

### Count One: Discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.

49. Plaintiff realleges and incorporates paragraph 1 through 48 herein.

50. Based upon the foregoing, Defendant violated the Pregnancy Discrimination Act when Ms. Scheffki fired Ms. Hackett and gave her job to others who were less qualified than Ms. Hackett, but who were not pregnant or who did not recently have children.

*Wherefore,* Plaintiff Cristina Hackett prays for the following relief:

A. That the Court enter a judgment in her favor and against Defendant; and that the Court order Defendant to reinstate Plaintiff and reimburse her for all back pay other benefits that she would have received but for Defendant's conduct;

B. That the Court award Ms. Hackett "front-pay" in lieu of reinstatement in the amount sufficient to compensate her for earnings she would have received but for Defendant's conduct;

C. That the Court award Ms. Hackett any and all compensatory damages to which she may be entitled;

D. That the Court award Ms. Hackett any and all punitive damages to which she may be entitled;

E. That the Court award prejudgment interest on any and all damages to which the Court finds that Ms. Hackett is entitled;

F. That the Court award reasonable attorneys fees and costs, and

G. That the Court award Ms. Hackett any and all other relief as this Court sees fit.

**Count Two: Failure to return Ms. Hackett to work in violation of the Family and Medical Leave Act of 1993.**

51. Plaintiff realleges and incorporates paragraphs 1 through 48 herein.

52. Defendant violated FMLA when it refused to return Ms. Hackett to work after an approved FMLA leave. Instead, Defendant gave Ms. Hackett's job to one or more people who were less qualified than Ms. Hackett but who had not recently used FMLA leave.

*Wherefore,* Plaintiff Cristina Hackett prays for the following relief:

A. That the Court enter a judgment in her favor and against Defendant; and that the Court order Defendant to reinstate Plaintiff and reimburse her for all back pay other benefits that she would have received but for Defendant's conduct;

B. That the Court award Ms. Hackett "front-pay" in lieu of reinstatement in the amount sufficient to compensate her for earnings she would have received but for Defendant's conduct;

C. That the Court award Ms. Hackett any and all compensatory damages to which she may be entitled;

D. That the Court award Ms. Hackett any and all punitive damages to which she may be entitled;

E. That the Court award prejudgment interest on any and all damages to which the Court finds that Ms. Hackett is entitled;

F. That the Court award reasonable attorneys fees and costs, and

G. That the Court award Ms. Hackett any and all other relief as this Court sees fit.

**Count Three: Retaliation in violation of Family and Medical Leave Act of 1993.**

53. Plaintiff realleges and incorporates paragraphs 1 through 48 herein.

54. Defendant retaliated against Ms. Hackett in violation of FMLA when Ms. Scheffki exerted no assistance, as she did for others who were not on leave when the alleged downturn had occurred, in finding a position for Ms. Hackett.

*Wherefore,* Plaintiff Cristina Hackett prays for the following relief:

A. That the Court enter a judgment in her favor and against Defendant; and that the Court order Defendant to reinstate Plaintiff and reimburse her for all back pay other benefits that she would have received but for Defendant's conduct;

B. That the Court award Ms. Hackett "front-pay" in lieu of reinstatement in the amount sufficient to compensate her for earnings she would have received but for Defendant's conduct;

C. That the Court award Ms. Hackett any and all compensatory damages to which she may be entitled;

D. That the Court award Ms. Hackett any and all punitive damages to which she may be entitled;

E. That the Court award prejudgment interest on any and all damages to which the Court finds that Ms. Hackett is entitled;

F. That the Court award reasonable attorneys fees and costs, and

G. That the Court award Ms. Hackett any and all other relief as this Court sees fit.

Respectfully submitted,
Cristina Hackett.,
Plaintiff.

By: *[signature: Lisa Stauff]*
her attorney

Lisa M. Stauff (ARDC #627580)
Law Offices of Lisa M. Stauff
1658 N. Milwaukee Ave., #327
Chicago, IL 60647
(773) 489-3170 phone
(773) 913-0522 fax
LStauff@staufflaw.com

# CHARGE OF DISCRIMINATION
Equal Employment Opportunity Commission

**CHARGE NUMBER:** 210A3010[?]

| | |
|---|---|
| NAME: Cristina Hackett | HOME TELEPHONE: (815) 464-3499 |
| ADDRESS: 21026 Stratford Court, Mokena, Illinois 60448 | BIRTH DATE: Dec. 23, 1968 |

THE EMPLOYER THAT DISCRIMINATED AGAINST ME:

| | | |
|---|---|---|
| NAME: Clifton Gunderson LLP | # OF EMPLOYEES: 15+ | PHONE: |
| ADDRESS: 1301 W. 22nd Street, Oak Brook, IL 60523 | | COUNTY: DuPage |

CAUSE OF DISCRIMINATION:

| | | | |
|---|---|---|---|
| RACE: ☐ | RELIGION: ☐ | NATIONAL ORIGIN: ☐ | DATE DISCRIMINATION TOOK PLACE: June 27, 2002 |
| SEX: ☐ | AGE: ☐ | HANDICAP OR DISABILITY: ☐ | |
| RETALIATION: ☐ | OTHER: ☒ pregnancy | | CONTINUING ACTION: No |

THE PARTICULARS ARE:

I. I was hired as a Software Specialist on March 19, 2001. I was informed on June 27, 2002 that I had been fired.

II. The stated reason for my termination was that due to a downturn in business, my position was eliminated.

III. I believe I was discriminated against on the basis of pregnancy as follows:

A. I always did a good job. I got along well with my supervisor, co-workers, and clients.

B. I was employed by Clifton Gunderson, LLP at the Joliet, Illinois office.

C. I was scheduled to go on maternity leave from April 8, 2002 to July 8, 2002.

D. Up until I went on maternity leave, business was brisk. My team had so much work that we frequently begged our supervisor to hire another consultant. We were told that another consultant would be hired.

E. On April 2, 2002, I went into labor, and my daughter was born via cesarean section.

F. I immediately informed my supervisor that I gave birth, and I began my maternity leave.

G. My doctor released me for work on June 25, 2002, but I got approval to take the rest of the week off and return to work on July 1, 2002.

H. On June 26, 2002, my supervisor, Michelle Scheffki ("Mickie"), called me at home to schedule a meeting for the next day. She was fairly insistent that we get together as soon as possible. I found the urgency odd because I had tried to call her many times over the past several weeks to check in, yet she did not return any of my phone calls. I had even checked with her assistant several times to make sure that Mickie received my messages, because it was not like Mickie to ignore my messages.

I. I went to the Joliet office for the meeting on June 27, 2002.

J. At this meeting I was informed by Mickie that I was fired because of the slowdown in business.

K. I asked about other positions anywhere within the company, but was told there were none--Mickie said she had looked into it.

L. I asked about others on my team, and I was told that they were being transferred to other offices.

M. I asked about my clients, and was told that they would be handled by employees at Clifton Gunderson's Oak Brook, Illinois

**EXHIBIT A**

office

N. Since my termination I have found out that my former clients are indeed being handled by employees in the Oak Brook office (who have to be trained in the software package that I sold), as well as by one of my former team members who continues to work for Clifton Gunderson.

O. Immediately after my termination, I saw several job postings on the Clifton Gunderson website for which I am qualified.

O. None of the people who replaced me were pregnant and/or had recently been on maternity leave, to my knowledge.

P. I was the only person from the Joliet office who was terminated due to the alleged downturn in business.

Q. There may have been other incidents of which I am not aware of Clifton Gunderson discriminating against other employees who were recently pregnant.

I swear or affirm that I have read this charge, and that it is true to the best of my knowledge, information, and belief.

X _Kristina Hackett_

SUBSCRIBED AND SWORN TO BEFORE ME ON THIS DATE 12-2- , 2002: _Gloria Del Bosque_
/ NOTARY PUBLIC

"OFFICIAL SEAL"
Gloria Del Bosque
Notary Public, State of Illinois
My Commission Expires 3-4-03

| AMENDED CHARGE OF DISCRIMINATION<br>Equal Employment Opportunity Commission | CHARGE NUMBER<br>210A301010 |
|---|---|
| NAME: Cristina Hackett | HOME TELEPHONE: (815) 464-3499 |
| ADDRESS: 21026 Stratford Court, Mokena, Illinois 60448 | BIRTH DATE: Dec. 23, 1968 |

THE EMPLOYER THAT DISCRIMINATED AGAINST ME:

| NAME: Clifton Gunderson LLP | # OF EMPLOYEES: 15+ | PHONE: |
|---|---|---|
| ADDRESS: 1301 W. 22nd Street, Oak Brook, IL 60523 | | COUNTY: DuPage |

CAUSE OF DISCRIMINATION:

| RACE: ☐ | RELIGION: ☐ | NATIONAL ORIGIN: ☐ | DATE DISCRIMINATION TOOK PLACE: June 27, 2002 |
|---|---|---|---|
| SEX: ☐ | AGE: ☐ | HANDICAP OR DISABILITY: ☐ | |
| RETALIATION: ☐ | OTHER: ☒ pregnancy | | CONTINUING ACTION: Yes |

THE PARTICULARS ARE:

I. I was hired as a Software Specialist on March 19, 2001. I was informed on June 27, 2002 that I had been fired.

II. The stated reason for my termination was that due to a downturn in business, my position was eliminated.

III. I believe I was discriminated against on the basis of pregnancy as follows:

    A. I always did a good job. I got along well with my supervisor, co-workers, and clients.

    B. I was employed by Clifton Gunderson, LLP at the Joliet, Illinois office.

    C. I was scheduled to go on maternity leave from April 8, 2002 to July 8, 2002.

    D. Up until I went on maternity leave, business was brisk. My team had so much work that we frequently begged our supervisor to hire another consultant. We were told that another consultant would be hired.

    E. During my pregnancy Mickie made several comments to myself and others about me being on the "mommy track" and implied that I was not as committed to my job as the other other non-pregnant women on the team.

    F. On April 2, 2002, I went into labor, and my daughter was born via cesarean section.

    G. I immediately informed my supervisor that I gave birth, and I began my maternity leave.

    H. My doctor released me for work on June 25, 2002, but I got approval to take the rest of the week off and return to work on July 1, 2002.

    I. On June 26, 2002, my supervisor, Michelle Scheffki ("Mickie"), called me at home to schedule a meeting for the next day. She was fairly insistent that we get together as soon as possible. I found the urgency odd because I had tried to call her many times over the past several weeks to check in, yet she did not return any of my phone calls. I had even checked with her assistant several times to make sure that Mickie received my messages, because it was not like Mickie to ignore my messages.

    J. I went to the Joliet office for the meeting on June 27, 2002.

    K. At this meeting I was informed by Mickie that I was fired because of the slowdown in business.

    L. I asked about other positions anywhere within the company, but was told there were none—Mickie said she had looked into it.

RECEIVED EEOC
APR - 9 2003
CHICAGO DISTRICT

**EXHIBIT B**

M. I asked about others on my team, and I was told that they were being transferred to other offices.

N. I asked about my clients, and was told that they would be handled by employees at Clifton Gunderson's Oak Brook, Illinois office.

O. Since my termination I have found out that my former clients are indeed being handled by employees in the Oak Brook office (who have to be trained in the software package that I sold), as well as by one of my former team members who continues to work for Clifton Gunderson.

P. Immediately after my termination, I saw several job postings on the Clifton Gunderson website for which I am qualified.

Q. None of the people who replaced me were pregnant and/or had recently been on maternity leave, to my knowledge.

R. I was the only person from the Joliet office who was terminated due to the alleged downturn in business.

S. There may have been other incidents of which I am not aware of Clifton Gunderson discriminating against other employees who were recently pregnant.

I swear or affirm that I have read this charge and that it is true to the best of my knowledge, information, and belief.

X _____

"OFFICIAL SEAL"
Gloria Del Bosque
Notary Public, State of Illinois
My Commission Expires 3-4-2007

SUBSCRIBED AND SWORN TO BEFORE ME ON THIS DATE April 1, 2003: _____
NOTARY PUBLIC

Equal Employment Opportunity Commission

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: Cristina Hackett<br>21026 Stratford Court<br>Mokena, IL 60448 | From: Equal Employment Opportunity Commission<br>500 West Madison<br>Suite 2800<br>Chicago, Illinois 60661 |
| Certified No.: 7099 3400 0006 7299 9305 | |

| [ ] | [ ] *On behalf of a person aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))* |
|---|---|

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 210A301010 | Sherice Galloway, Investigator | (312) 886-4824 |

*(See the additional information attached to this form.)*

YOUR CHARGE IS DISMISSED FOR THE FOLLOWING REASON:

[ ] [ ] The facts you allege fail to state a claim under any of the statutes enforced by the Commission

[ ] [ ] Respondent employs less than the required number of employees.

[ ] [ ] Your charge was not timely filed with the Commission, *i.e.*, you waited too long after the date(s) of the discrimination you alleged to file your charge. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[ ] [ ] You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conferences, or or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your charge. You have had more than 30 days in which to respond to our final written request.

[ ] [ ] The Commission has made reasonable efforts to locate you and has been unable to do so. You have had at least 30 days in which to respond to a notice sent to your last known address.

[ ] [ ] The respondent has made a reasonable settlement offer which affords full relief for the harm you alleged. At least 30 days have expired since you received actual notice of this settlement offer.

[ X ] [ ] The Commission issues the following determination: Based upon the Commission's investigation, the Commission is unable to to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] [ ] Other *(briefly state)* _____

### - NOTICE OF SUIT RIGHTS -

[ X ] [ ] **Title VII and/or the Americans with Disabilities Act:** This is your NOTICE OF RIGHT TO SUE, which terminates the Commission's processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. **If you decide to sue, you must sue WITHIN 90 DAYS from your receipt of this Notice; otherwise your right to sue is lost.**

[ ] [ ] **Age Discrimination in Employment Act:** This is your NOTICE OF DISMISSAL OR TERMINATION, which terminates processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. **If you decide to sue, you must sue WITHIN 90 DAYS from your receipt of this Notice; otherwise your right to sue is lost.**

[ ] [ ] **Equal Pay Act (EPA):** EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

On behalf of the Commission

5-30-03                                    *(signature)*
                                           John P. Rowe, District Director

Enclosures
  Information Sheets
  Copy of Charge
cc: Respondent(s)        Clifton Gunderson L.L.C.

EEOC Form 161 (Test 5/95)

**EXHIBIT C**

JUDGE KENNELLY

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

MAGISTRATE JUDGE MASON

## Civil Cover Sheet   03C 6046

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use <u>only</u> in the Northern District of Illinois.

DOCKETED AUG 28 2003

**Plaintiff(s):** CRISTINA HACKETT

County of Residence: WILL

Plaintiff's Atty: Lisa M. Stauff, Esq.
Law Offices of Lisa M. Stauff
1658 N. Milwaukee Ave., #327, Chicago, IL 60647
(773) 489-3170

**Defendant(s):** CLIFTON GUNDERSON LLC

County of Residence: DUPAGE

Defendant's Atty:
J. REED ROESLER
Davis & Campbell LLC
401 Main Street, #1600,
Peoria, IL 61602

II. Basis of Jurisdiction:    3. Federal Question (U.S. not a party)

III. Citizenship of Principal Parties (Diversity Cases Only)
   Plaintiff:- N/A
   Defendant:- N/A

IV. Origin :    1. Original Proceeding

V. Nature of Suit:    442 Employment

VI. Cause of Action:    **Termination in violation of the Pregnancy Discrimination Act, Title VII of the Civil Rights Act of 1964. Termination and retaliation in violation of Family and Medical Leave Act.**

VII. Requested in Complaint
   Class Action:
   Dollar Demand:
   Jury Demand: **Yes**

VIII. This case **IS NOT** a refiling of a previously dismissed case.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

 

JUDGE KENNELLY

MAGISTRATE JUDGE MASON

In the Matter of

Hackett v. Clifton Gunderson LLC

Case Number: 03C 6046

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Cristina Hackett

**DOCKETED AUG 2 8 2003**

| (A) | (B) |
|---|---|
| SIGNATURE *Lisa M. Stauff* | SIGNATURE |
| NAME Lisa M. Stauff | NAME |
| FIRM Law Offices of Lisa M. Stauff | FIRM |
| STREET ADDRESS 1658 N. Milwaukee Ave., #327 | STREET ADDRESS |
| CITY/STATE/ZIP Chicago, IL 60647 | CITY/STATE/ZIP |
| TELEPHONE NUMBER (773) 489-3170 / FAX NUMBER (773) 913-0522 | TELEPHONE NUMBER / FAX NUMBER |
| E-MAIL ADDRESS LStauff@staufflaw.com | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6275980 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☑ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☑ | TRIAL ATTORNEY? YES ☐ NO ☐ |
|  | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER / FAX NUMBER | TELEPHONE NUMBER / FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |